(C.D. 2575)

HENRY A. WESS, INC. *v.* UNITED STATES

United States Customs Court, First Division

(Decided September 28, 1965)

*Tompkins & Tompkins* (*Allerton deC. Tompkins* of counsel) for the plaintiff.
*John W. Douglas*, Assistant Attorney General (*Bernard J. Babb* and *Harvey A. Isaacs*, trial attorneys), for the defendant.

Before OLIVER, WILSON, AND NICHOLS, Judges

WILSON, Judge: The merchandise here under protest was described on the invoice as "KOKATO ROSE LAMP." It consists of plastic baskets each with an electric cord extending therefrom, containing one, two, or three stems of electrically lighted "artificial roses" (stem, leaves, and flowers). It appears that each stem has an electrical male plug on the end which is designed to be plugged into an electric socket at the bottom of the basket. A small electric bulb in the center or bud portion of each "flower" lights up when the male plug is plugged into an electrical outlet.

The merchandise was classified at the rate of 35 per centum ad valorem under paragraph 1518(a) of the Tariff Act of 1930, as modified by the Japanese Protocol of Terms of Accession to the General Agreement on Tariffs and Trade, T.D. 53865, and T.D. 53877, under the provision therein for articles, not specially provided for, in chief value of artificial flowers, composed of "other" materials. Paragraph 1518(a), as modified, *supra*, provides in part as follows:

Artificial or ornamental fruits, vegetables, grasses, grains, leaves, flowers, stems, or parts thereof:

 * * * * * * *

Boas, boutonnieres, wreaths, and all articles not specially provided for, composed wholly or in chief value of any of the fruits, vegetables, grasses, grains, leaves, flowers, stems, or parts provided for in the preceding item 1518(a) which components are wholly or in chief value of—

 * * * * * * *

 Other materials (not including feathers) _____35% ad val.

Plaintiff claims that these articles do not fall within the provisions of said paragraph 1518(a) of the act, *supra*, and that they should be classified either directly or by similitude in use (paragraph 1559 of the

tariff act, as amended), to the articles covered by the following alternative paragraphs:

13¾% ad valorem under Paragraph 353 of the same Act as modified, T.D. 52739, as other articles having as an essential feature an electrical element or device.

Alternatively, at 18% ad valorem under Paragraph 31(a)(2) of the same Act as modified, T.D. 54108, as finished or partly finished articles of which cellulose acetate is the component material of chief value, not specially provided for.

Alternatively, under Paragraph 339 of the same Act with duty at 13½% ad valorem (T.D. 54108) as household utensils in chief value of brass, or at 18% with duty at 18% ad valorem (T.D. 54108) as household utensils in chief value of other base metal, not plated with platinum, gold or silver.

Alternatively, at 20% ad valorem under Paragraph 397 of the same Act as modified, T.D. 54108, as articles in chief value of base metal.

Alternatively, at 10% ad valorem under Paragraph 1558 of the same Act as modified, T.D. 52827, as a nonenumerated manufactured article. [Plaintiff's brief, page 2.]

The record consists of the testimony of two witnesses called by the plaintiff herein and three exhibits (plaintiff's exhibits 1, 2, and 3), received in evidence for the purpose of identifying the merchandise at bar.

The first witness called by the plaintiff was Mr. John Hrebenyar, importer of the merchandise at bar, who testified essentially as follows: Plaintiff's exhibit 1 is the imported article with one stem, representing the item identified on the invoice as either "E" or "F," the items differing solely in the design of the basket (R. 7–9). At the time of importation, the flowers were not in the baskets, but were packed separately. However, the flowers and baskets were designed to be used together and constitute an entirety (R. 9–10). Plaintiff's exhibit 2 is representative of the basket portion of items "A" and "B," listed on the invoice herein, and is imported with three roses exactly the same as that shown in plaintiff's exhibit 1. Items "C" and "D" on the invoice consisted of two roses and a basket halfway the size of those represented by plaintiff's exhibits 1 and 2 (R. 11). Plaintiff's exhibit 3 is a report of the analysis of the articles at bar made at the United States Customs Laboratory at Philadelphia, Pa. Said report establishes that the stem, leaf, and flower portion (found by the Government to be the component material of chief value (R. 16–17)) is composed of cellulose acetate.

Mr. Hrebenyar further testified that he has seen merchandise such as that imported in the same places that use ordinary metal lamps; that they were perfect for use as TV lamps or for use in bedrooms, hallways, and sick rooms as night lights (R. 12). As demonstrated by plaintiff's witness, when exhibit 1 is plugged into an electrical outlet, the center portion of the rose lighted up (R. 12–13). In the opin-

ion of the witness, the items at bar are not similar to earthenware, chinaware, or glass lamps since the imported articles are unbreakable (R. 13). Upon cross-examination, Mr. Hrebenyar stated that, insofar as their ability to light up a room is concerned, the imported articles perform in the same manner as porcelain, glass, or earthenware night lights (R. 15).

Plaintiff's final witness was Mr. James F. Jedlicka, deputy appraiser for the port of Cincinnati, Ohio, who testified that the merchandise in question was advisorily classified by him as an article "in chief value of artificial flowers, stems, leaves" (R. 17). He further stated that he had arranged to have an analysis made of the articles before the court, the report on which has been heretofore identified as plaintiff's exhibit 3.

Both plaintiff and defendant in their briefs have directed our attention to a number of cases wherein the court was called upon to pass upon the question whether certain merchandise there involved was properly classifiable under paragraph 1518, *supra*, as articles in chief value of artificial flowers, stems, or leaves. In *Mottahedeh Creations, Ltd., et al.* v. *United States*, 43 Cust. Ct. 9, C.D. 2095, the court, in referring to a recent opinion of our appellate court in *Marshall Field & Co.* v. *United States*, 45 CCPA 72, C.A.D. 676, decided January 22, 1958, stated:

\* \* \* There, certain merchandise invoiced as "Iron Works, Metal fruits w/ leaves" and other merchandise invoiced as "Iron pictures of 4 season flowers rusty finish with dull black wooden frame" were classified as "artificial fruits" and "artificial flowers," respectively, under paragraph 1518, as modified, *supra*, and claimed properly dutiable under paragraph 397 of the act as articles or wares in chief value of base metal. The merchandise described as "Iron Works, Metal fruits w/leaves" consisted of a three-dimensional, realistic representation of a stem, about 6 inches long, attached to which were four short branches, three of the latter containing leaves about 3 inches long and the fourth branch having attached thereto an object resembling a small pomegranate. The color of the whole was that of slightly rusty iron. An illustrative sample of the "Iron pictures of 4 season flowers" disclosed a framed representation of simulated flower stems of roughened wire from which ran a number of branches bearing leaves and flowers somewhat like large daisies.

The court, in the *Marshall Field* case, *supra*, after referring to a number of cases wherein the court in those cases considered whether certain articles were artificial fruits or flowers, at page 81, stated:

It will be seen from the cases above mentioned that many different factors were taken into consideration in determining whether the articles in each case were artificial fruits or flowers. These factors were not limited to the two questions of closeness of simulation and suitability to the ornamental uses of real flowers referred to in the *Cochran* opinion but included others such as size, primary function, other recognized names, uses and applicable tariff act provisions, and ordinary common sense. The situation must be viewed as a whole.

The tariff laws are drafted in the language of commerce which is presumptively that in common use and no testimony as to common meaning is required to make out a case because such testimony, if offered, is merely advisory to the court. *Hummel Chemical Co.* v. *United States, supra.* We have before us samples of the merchandise which, in a case of this character, are most potent witnesses, *United States* v. *The Halle Bros. Co.,* 20 C.C.P.A. (Customs) 219, T.D. 45995; *United States* v. *Fred. Gretsch Mfg. Co., Inc.,* 28 C.C.P.A. (Customs) 26, C.A.D. 120.

We hold, on the ample evidence before us, that the metal fruit with leaves exemplified by Exhibit 1 is not in the category of "artificial fruits," as classified, because in our judgment it is properly described as a wrought iron wall decoration using a fruit and leaf motif. We believe that the common understanding of the term "artificial fruit" does not encompass such iron objects, particularly when their overall color is that of oxidized iron so as to give the observer the distinct and immediate impression that it is a work of wrought iron, to be used where it is desired, to add a touch of wrought iron to the interior décor, not where one would normally use real fruit or close imitations thereof in form and color.

The "iron pictures" exemplified by Exhibit 2 we hold are not in the category of "artificial flowers" wherein they were classified. They are a species of three-dimensional monochrome pictorial compositions mounted in frames and are obviously to be used as framed pictures are used, hanging on a wall as testified. This is not the use to which real flowers are normally put, nor the close imitations thereof which might be mistaken therefor.

See also, the case of *Hensel, Bruckmann & Lorbacher, Inc.* v. *United States,* 47 Cust. Ct. 112, C.D. 2289, wherein the court followed the holding in the *Marshall Field* case, *supra,* and held that "Certain iron wall ornaments, using a branch and leaf motif, the overall color and appearance of which is that of wrought iron, and used to add a touch of wrought iron to the décor," were properly classifiable under paragraph 397 of the Tariff Act of 1930, as modified, as articles or wares not specially provided for, composed wholly or in chief value of iron, as claimed, rather than under paragraph 1518 of the said act as articles in chief value of artificial leaves and stems, as classified.

In *Mottahedeh Creations, Ltd., et al.* v. *United States, supra,* five of the involved items consisted of wrought iron articles, painted in natural colors, which simulated the natural flowers, fruits, leaves, or stems in physical characteristics and appearance. As represented by the exhibits in evidence, they consisted of the following: Plaintiffs' exhibit 1, a potted lily plant, with buds and flowers "in true Rubrum lily pink, in dark green cache pot with gold accents"; plaintiffs' exhibit 2 represented a rose bush in natural colors, set in a cache pot; plaintiffs' exhibit 3 was also a potted lily plant identical in all details with plaintiffs' exhibit 1, except in color; plaintiffs' exhibit 4, invoiced as "CANDLESTICKS," was described as "An apple tree adorned with fruit and blossoms and a trio of birds plumaged in natural colors. Candles stand on spiked ends of boughs"; plaintiffs' exhibit 5 was another

wrought iron article which represented an "Espalier Apple Tree" standing in a cache pot, with apples, branches, and leaves in natural colors. This item contained a threaded portion at the top of the branch which ran through the center of the article. A descriptive brochure respecting this exhibit stated: "Hollow center makes electrification easy"; plaintiffs' exhibit 6 was a twin candlestick set in joined branches, which made the base of the article, containing a bird, leaves, and strawberries in natural colors. The court, in the *Mottahedeh* case, *supra*, held the merchandise, represented by plaintiffs' exhibits 1, 2, 3, 4, and 5 therein, properly dutiable under paragraph 1518 of the tariff act, as modified, as articles in chief value of artificial flowers, leaves, etc., as classified, in that they simulated the natural flowers, leaves, etc., in physical characteristics and appearance sufficiently to cause them in common understanding to be regarded as artificial flowers, leaves, etc. The claim that such articles were properly classifiable under paragraph 397 of the act, as modified, as articles in chief value of iron or other metal was, accordingly, disallowed. With respect to the merchandise represented by plaintiffs' exhibit 6, the court, in the *Mottahedeh* case, held such merchandise properly classifiable under the claimed paragraph 397, stating that the dedication of that item to specific use as a wrought iron candlestick holder, using a flower and leaf motif, was paramount in its determination.

In *Coro, Inc.* v. *United States*, 39 CCPA 154, C.A.D. 478, the merchandise consisted of certain metal and glass costume jewelry pins, the brooch portion being made to resemble a conventional flower. In holding the items not classifiable under paragraph 1518 of the tariff act, our appellate court, pages 157–158, stated:

In our opinion, even though it may be said that the involved articles are conventionally flower-like, they are neither 'appropriate nor suitable for the well-known purposes of ornamentation to which artificial flowers may be temporarily devoted. They are simply costume jewelry in the form of brooches which, omitting the pin portion, may be said to look like the form of some kind of a flower. It would tax the imagination to picture such articles as being artificial flowers in accordance with common understanding.

See also, *Bergdorf Goodman Co.* v. *United States*, 38 Cust. Ct. 177, C.D. 1859.

It is well settled that whether an article is an artificial flower, etc., is to be determined by its *per se* character. In *Morimura Bros.* v. *United States*, 8 Ct. Cust. Appls. 111, T.D. 37223, our appellate court, in holding certain merchandise consisting of artificial pears and apples, chiefly used as pincushions, properly dutiable as artificial and ornamental fruits under paragraph 347 of the Tariff Act of 1913, at page 113, stated:

In the paragraph the words "artificial" and "ornamental" are used conjunctively, modifying and qualifying among others the word "fruits." Inferentially,

if not presumptively, these qualifying words were used by the legislature in the same limiting sense. It will not be questioned that "artificial" relates to and qualifies the word "fruits," and was therefore used in a per se sense and not as indicating use. * * *

In our opinion, the conclusion of the court and the reasoning therein in the *Marshall Field & Co.* case (C.A.D. 676), *supra*, as well as the determination of the court in the *Coro, Inc.*, case, *supra*, is equally applicable in the determination of the proper classification of the involved articles. In our opinion, the articles at bar are neither "appropriate nor suitable for the well-known purposes of ornamentation to which artificial flowers may be temporarily devoted." The merchandise at bar, represented by plaintiff's exhibit 1, consists of something more than just a basket of artificial roses. Samples are potent witnesses. *Marshall Field Co.* v. *United States*, 20 CCPA 225, T.D. 46037. The representative sample is a wired electric lamp, which, when not lighted, serves a secondary function as an ornament. Plaintiff's witness who testified that he had personally bought items such as those at bar, stated that he had seen such items being used many times. His further testimony was to the effect that the articles were used in the same places and for the same purposes as ordinary night lights (R. 12). There is no other evidence in the record tending to disprove that they were not so used. In *Wing On Co. and W. J. Byrnes & Co.* v. *United States*, 47 Cust. Ct. 122, C.D. 2291, the merchandise consisted of certain articles in the form and shape of lotus flowers with a brass spike in the center for the insertion of a candle. This court, in holding that the articles there involved should not be classified under paragraph 1518, *supra*, at page 127, stated:

* * * The record here would appear to indicate that the flower motif in the involved articles is secondary and that, while ornamental and flowerlike, they are designed to be employed for lighting purposes and so used.

* * * An artificial flower can, of course, be used to ornament, but it does not follow, in logic, that because a thing can be used to ornament it is necessarily an artificial flower, even though it has some other flowerlike characteristics. *Marshall Field & Co.* case, *supra*. The same observation might be made with equal force, in our opinion, with respect to the articles here involved. Further, the use to which these candleholders are put is not that "to which real flowers are normally put, nor the close imitations thereof which might be mistaken therefor." *Marshall Field & Co.* case, *supra*.

So, too, in the case at bar, we are of opinion that the primary function of the involved articles is for lighting purposes, their use for ornamentation being secondary. Accordingly, for the reasons heretofore stated, we are of opinion and hold that the merchandise at bar is not properly classifiable under the provisions of paragraph 1518, as modified, *supra*.

The report of the analysis of the involved merchandise, as heretofore indicated, conclusively establishes, in our opinion, that the stem, leaf, and flower portion of these articles—which plaintiff apparently concedes constituted the component material of chief value—is in chief value of cellulose acetate. Articles composed in chief value of cellulose acetate are specifically enumerated in paragraph 31(a)(2) of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, T.D. 54108. It having been held that the involved articles are not subject for classification purposes to the provisions of paragraph 1518, *supra*, we are of the opinion that said merchandise is more specifically provided for under paragraph 31(a)(2) of the Tariff Act of 1930, as modified, *supra*, than under the provision for nonenumerated articles in paragraph 1558 of the said act, and, similarly, that it is not classifiable under the other claimed paragraphs of the tariff act. Accordingly, we hold the merchandise at bar properly classifiable under paragraph 31(a)(2) of the Tariff Act of 1930, as modified, *supra*, at the rate of 18 per centum ad valorem as articles of which cellulose acetate is the component material of chief value, not specially provided for, as claimed. To the extent indicated, the protest is sustained. As to all other claims, the protest herein is overruled.

Judgment will issue accordingly.