BEFORE THE FIRST DIVISION, NOVEMBER 14, 1957

**No. 61346.**—Wm. Shaland *v.* United States, protest 271739–K (New York).

WILSON, Judge:  The merchandise in the case at bar, invoiced as "Shell Flower," item No. 8201, was classified under paragraph 1518 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T. D. 51802, supplemented by Presidential proclamation, T. D. 51898, at the rate of 45 per centum ad valorem as artificial flowers, composed wholly or in chief value of materials "other" than yarns, threads, filaments, tinsel wire, lame, bullions, metal threads, beads, bugles, spangles, or rayon or other synthetic textile, not specially provided for.   Plaintiff claims the merchandise properly classifiable under paragraph 1413 of said act, as modified by the Annecy Protocol of Terms of Accession to the General Agreement on Tariffs and Trade, T. D. 52373, supplementd by Presidential proclamation, T. D. 52462, at the rate of 17½ per centum ad valorem as manufactures of paper, or of which paper is the component material of chief value.   Alternatively, plaintiff claims that the involved merchandise should be classified under paragraph 1538 of the tariff act, as modified by the Annecy Protocol of Terms of Accession to the General Agreement on Tariffs and Trade, T. D. 52373, supplemented by Presidential proclamation, T. D. 52476, at the rate of 17½ per centum ad valorem as manufactures in chief value of shell.

Plaintiff introduced in evidence certain samples of the involved merchandise. Each of these items consists of two clam shells, in which there is inserted and affixed a colored paper insert that crudely resembles a flower with a thin cotton string that attaches the insert to the shells.   The two shells are closely held together by a strip of small paper enclosing the article, on which appears the wording "Wonder Shell."   In the condition as imported, only the shells are visible (plaintiff's collective exhibit 1) (R. 11).   When the shells, such as those here in question, are immersed in water, the outside paper dissolves, the shells open up, and the inside paper or insert rises up in the form of a colored flower (plaintiff's illustrative exhibit 2) (R. 16).

The only witness called was Mr. Kenneth Greenwald, employed by the plaintiff concern for the past 5 years as a salesman. He testified that, in connection with his duties, he has been familiar with the involved item, which he described as a "shell flower." The witness stated that, at the time of importation, the article under consideration, while it may vary in size according to growth, is always in the form of a closed natural shell, "with some paper around it," bearing the legend, as previously noted, "Wonder Shell" (R. 9–10). Mr. Greenwald further testified that he sold such merchandise in the wholesale trade to "Wholesale carnival jobbers and trick and novelty jobbers"; that he had seen the merchandise used by children and adults, "mostly as a party gag or a trick item"; that, when the item opens up after being immersed in water and the paper insert rises up in the form of a flower, the "flower" lasts about an hour or two and thereafter disintegrates; that, after such use, the item cannot be used again, but must be thrown away (R. 13–15). Plaintiff's witness subsequently testified, with respect to the item in question, that "The purpose of it is not the intent of a flower but the magic of the shell opening up and something arising from it" (R. 18).

On cross-examination, Mr. Greenwald agreed that natural flowers or petals of flowers, after being placed in a bowl of water, would not last indefinitely.

The issue in this case is whether the shells at bar, in their condition as imported, are dutiable as classified under the provisions of paragraph 1518 of the tariff act as artificial or ornamental flowers.

The question here for determination has been previously passed upon by this and our appellate court. In *De Waubert, Inc.*, and *N. M. Albert Co., Inc.* v. *United States*, 36 Cust. Ct. 12, C. D. 1747, decided January 5, 1956, in construing the provisions of the paragraph under which the involved merchandise was classified, cited as applicable the case of *Coro, Inc.* v. *United States*, 39 C. C. P. A. (Customs) 154, C. A. D. 478. In the latter case, our appellate court held certain costume jewelry, designed to be attached to dresses, coats, and hats, not to be classifiable under paragraph 1527 (a) of the Tariff Act of 1930 and paragraph 1518 of the same act as articles in chief value of artificial flowers, but properly classifiable under paragraph 1527 (a) of the pertinent tariff act as jewelry. In so holding, the appellate court made reference to the case of *Cochran Co. et al.* v. *United States*, 10 Ct. Cust. Appls. 62, T. D. 38336. The merchandise in the *Cochran* case, *supra*, consisted in part of "a cluster made of black straw wound into the form of berries or grapes and set on a black-straw leaf attached to a stem made of black straw and metal. * * * a spray of black leaves bearing a black rose. The spray and rose are composed of black straw sewed with black thread to a stiff woven fabric which serves the purpose of a foundation or framework." In holding that the items in question were properly dutiable under paragraph 347 of the Tariff Act of 1913 as "artificial and ornamental * * * leaves, flowers, and stems or parts thereof," the court, in the *Cochran* case, *supra*, page 64, stated:

It may be that neither exhibit truly represents any natural flower, fruit, leaf, or stem. Nevertheless, both come within the tariff designation of "artificial and ornamental fruits, grains, leaves, flowers, and stems," inasmuch as they are articles which simulate the natural fruit, flower, leaf, or stem in its physical characteristics and appearance sufficiently to cause them in common understanding to be regarded as leaves, stems, flowers, or fruits produced not by nature, but by the hand of man, and which at the same time are appropriate and suitable to be used for those purposes of ornamentation to which the natural products may be temporarily devoted.

In the *Coro* case, *supra*, the appellate court, referring to the above quotation as set forth by the court in the *Cochran* case, *supra*, at page 157, stated:

We desire to draw particular attention to the latter portion of that quotation which determined that, even though the artificial articles possess the attributes

and qualities set forth in the previous portion of the quotation, those articles must be such that they "* * * at the same time are appropriate and suitable to be used for those purposes of ornamentation to which the natural products may be temporarily devoted."

In our opinion, even though it may be said that the involved articles are conventionally flower-like, they are neither appropriate nor suitable for the well-known purposes of ornamentation to which artificial flowers may be temporarily devoted. They are simply costume jewelry in the form of brooches which, omitting the pin portion, may be said to look like the form of some kind of a flower. It would tax the imagination to picture such articles as being artificial flowers in accordance with common understanding.

In the case at bar, the involved articles, in their condition as imported, do not meet the test under the tariff act for artificial flowers. While the items in question, when immersed in water, open up and disclose a flowerlike article, they do not have the uses to which natural or artificial flowers are devoted, and no natural or artificial flowers are so limited in their use. Clearly, these items are novelty items and used as such, and they are "neither appropriate nor suitable for the well-known purposes of ornamentation to which artificial flowers may be temporarily devoted." They, thus, do not conform to the test for artificial flowers, as enunciated in the *Cochran* and *Coro* cases, *supra*.

For the aforesaid reasons, the articles at bar are excluded from classification under paragraph 1518 of the tariff act as artificial flowers.

Plaintiff claims that the merchandise in question is properly classifiable under paragraph 1413, as amended, as manufactures of paper, or of which paper is the component material of chief value, not specially provided for, or under paragraph 1538, as amended, as manufactures in chief value of shell. The record in the case at bar discloses the following:

JUDGE WILSON: You claim it isn't in chief value of shell?

MR. WEIL: No; the Government classified this article, your Honor, under Paragraph 1518, as Mr. Mandell originally said, as an article composed of an artificial flower, of other material, to wit, paper. * * *

Now we contend that the article as imported is an article composed of an artificial flower, or in chief value of an artificial flower, and there is such a provision. (R. 3–4.)

\*        \*        \*        \*        \*        \*        \*

CHIEF JUDGE OLIVER: What is the Government's contention, that the component material of chief value is?

MR. WEIL: An artificial flower.

JUDGE WILSON: Regardless of the material?

MR. WEIL: We contend that that is the component material of chief value, Judge Wilson.

JUDGE MOLLISON: What is that component made of, what sort of material?

MR. WEIL: We agree that it is paper. * * *

\*        \*        \*        \*        \*        \*        \*

JUDGE MOLLISON: If it were held to be an artificial flower then you agree that that artificial flower would be made of paper, is that right?

MR. MANDELL: That is my understanding.

MR. WEIL: That is correct, your Honor. (R. 6–7.)

At the trial, counsel for the plaintiff conceded that the shell in the involved item is not the component material of chief value (R. 5).

It, accordingly, appears from the aforesaid concession made by counsel for the Government that the component material of chief value of the items here involved is paper.

Based upon the record here presented, we are of opinion that the plaintiff, in this case, has overcome the presumption of correctness attaching to the collector's classification. The items under consideration, the component material in chief value of which consists of paper, are, accordingly, properly classifiable under paragraph 1413 of the Tariff Act of 1930, as modified by the Annecy Protocol of Terms of Accession to the General Agreement on Tariffs and Trade, T. D. 52373, supplemented by T. D. 52462, at the rate of 17½ per centum ad valorem as manufactures of paper, or of which paper is the component material of chief value, not specially provided for, as claimed.

The protest is sustained. Judgment will be entered accordingly.